A. M. PRIMROSE, Appellant, v. JAMES PRIMROSE et al., Ap- pellees.

TRUSTS: Evidence—Insufficiency. Evidence held insufficient to establish a trust in real property.

*Appeal from Benton District Court.*—B. F. CUMMINGS, Judge.

APRIL 13, 1920.

Action in equity to establish a trust in real estate and for an accounting. The facts are fully stated in the opinion. The court below dismissed plaintiff's. petition, and he appeals.—*Affirmed.*

*B. L. Wick* and *L. M. Kratz,* for appellant.

*Nichols & Nichols,* for appellees.

STEVENS, J.—Plaintiff and defendants, James, Adam, William, and John Primrose, are brothers, and the sons of John and Julia Primrose, deceased. John Primrose, Sr., died testate, April 27, 1907, in Linn County, and Julia Primrose, in April, 1916. By his will, John Primrose bequeathed to Julia Primrose, in lieu of her distributive share, the rents and profits from his farm, which consisted of 374 acres in Linn County, so long as she should live, and to each of his four daughters, $3,000, absolutely or in trust, payable after the death of Julia, and the remainder to his five sons, share and share alike, providing, however, that the share of John Primrose, Jr., should be held in trust by his brother James, for a time, and upon conditions named.

In addition to the farm, deceased, at the time of his death, owned a residence property in Cedar Rapids. Some time after the death of their father, Adam Primrose became indebted to the estate upon a note in the sum of $800, William Primrose upon a note of $500, and plaintiff upon a note of $3,400, payment of which was secured by a mortgage upon his interest in the estate. In the fall of 1914, plaintiff became involved in financial difficulties, and went into voluntary bankruptcy, listing among his assets his interest in his father's estate. On July 28, 1915, the trustee

in bankruptcy conveyed plaintiff's interest in all of the real estate to defendants, for a consideration of $2,800, which was borrowed by them from a local bank, upon individual note. Plaintiff alleged in his petition that, prior to the execution of the trustee's deed, he entered into an oral contract with the defendants, by the terms of which it was mutually agreed that the farm and city property should be appraised; that defendants would take same at the appraised value, and convey the Cedar Rapids property to plaintiff at its appraised value, charge him with the amount of his indebtedness due to the estate, including his share of the amount to be paid to the four sisters, and the $2,800 paid to the trustee in bankruptcy, and pay him the difference between one fifth of such appraised value and the aggregate amount of the above sums, with interest. He alleges that there is due him under said arrangement the sum of $1,870.-31. By an amendment to his petition, he alleges further that the interest acquired by the defendants by the trustee's deed was, by said oral agreement, to be held by them in trust for him until the death of Julia Primrose, when division and distribution should be made, as alleged; that defendants partially carried out said agreement, by conveying the residence to him, and by the payment of $250 by James Primrose, who was the executor of the estate. Plaintiff further alleged in said amendment that the defendants subsequently divided the farm, each of the remaining brothers paying to James his share of the amount due plaintiff, who retains and refuses to pay same to plaintiff.

The defendants, in answer, admit numerous allegations of plaintiff's petition, but deny the alleged oral agreement, and that they obligated themselves in any way to pay plaintiff anything.

In addition to the denial contained in their answer, appellees contend that, if the alleged contract is established by the evidence, it is unenforcible, for the following

reasons: (a) That it was without consideration; (b) that it is within the statute of frauds; and (c) that it attempts to create an express, oral trust in real estate, and therefore contravenes the provisions of Section 2918 of the Code. All of the parties to this action were witnesses, and testified fully concerning the transactions between them. The execution of a deed conveying the residence in Cedar Rapids to plaintiff, and the delivery of a check for $250 by the defendant James Primrose to plaintiff, are admitted. These transactions were had subsequent to the execution of the trustee's deed.

According to the testimony of plaintiff, he went to his brother James, some time after the bankruptcy proceedings were instituted, and told him of his trouble, and said that "there was a chance to get my share of the estate,—that is, buy it from the creditors,—and he said he did not like to mix in with it, and, of course, it was placed where, if they didn't, somebody else would;" that he and James then went to see John, who said he would have nothing to do with the matter, unless it would be of some good to plaintiff; that he would do anything he could for him; that he then went to see William and Adam, who made substantially the same statements as the other defendants. Testifying further as to these conversations, plaintiff, referring to the land, said:

"I mentioned that it ought to be kept in the family, —that we should not allow strangers to get it; and they thought that it was a good idea, too, if it would not lose any money in it."

Plaintiff also testified to a later conversation with the defendants Adam, William, and John Primrose, during which John asked him why he did not come in with them, so as to share in his father's estate; that they requested him to get the money, and pay what he was owing the estate, his share of the $12,000 to be paid to his sisters, and the $2,800

paid the trustee in bankruptcy, and told him that, if he would do so, he could come in and share the property with them, according to the terms of the will. All of the defendants denied that they at any time agreed to pay plaintiff the difference between the amounts owed by him, including the purchase price of his interest in the estate, and one fifth of the appraised value thereof. They all admit, however, that they expressed a willingness for plaintiff to have the portion of the estate left him by his father, upon condition that he pay the sums mentioned.

Plaintiff admitted that he endeavored to borrow the money for that purpose, but did not succeed. The record does not sustain the alleged oral contract. The construction most favorable to plaintiff that can be placed upon the several conversations and transactions of the parties is that defendants expressed a willingness, and offered to permit plaintiff, upon the payment of the several sums above mentioned, to share equally with them in the division and distribution of the estate. He does not claim to have paid any part of the amount due the estate or his brothers.

At the request of defendants, the farm was appraised by three men, whose appraisement was taken as the basis upon which the division thereof was made between them, each taking a portion of the land, and paying in cash such sum as was necessary to equalize differences. The claims of plaintiff were not taken into consideration in the division. Counsel for appellant, in argument, rely upon the conveyance of the residence in Cedar Rapids, and the payment of $250 by James, as strong circumstances tending to corroborate the alleged oral agreement; but, as already stated, the evidence not only fails to establish the alleged agreement, but these transactions are fully and consistently explained by defendants. Concerning these matters, James Primrose testified:

"My explanation of the $250 sent to Allie is as follows:

I was down in Cedar Rapids, and stayed all night with Allie; and while I was there, we got to talking about running all over Cedar Rapids, hunting a house to rent, and he could not find anything less than $30 or $35 a month. He said, 'What are you going to do with the house here?' I says, 'I don't know, we will either sell it or rent it.' I says, 'Would you take the house and lot, instead of the little share that is coming to you, and leave that to the boys?' And he says, 'Yes.' And I says, 'All right, I will see the boys, and, if they consent to turn the house and lot over to you, and you can have the house to live in, and you won't have to run all over Cedar Rapids hunting a house to rent.' And I asked my brothers, while we were settling up the last time, and they agreed to sign it over to him, so he would have a home to live in, without renting. Again, I say, I asked him if he would take the cash money, after figuring out his note and other things coming out, or if he would take the house and lot, instead of this cash money, and he says, 'Yes.' By this cash money, I referred to an interest in the notes, one for $500 and one for $800, and I asked him whether he would take the homestead, and give up his interest in these notes, and he said, 'Yes,' he would. I did not have any talk with him to the effect, and nothing was said about his taking the homestead and the other boys paying in any interest in the farm, and there was no such talk as that. I don't know exactly when this talk occurred, but we had the last settlement, and I reported to the boys about the talk I had with him taking the homestead and giving up his interest in the personal property, and the boys agreed in the same way. There was never a word mentioned in my presence between me and the brothers, aside from Allen, to the effect that he was to have any interest in the farm, and take the homestead also for his interest in the farm. There never was any talk between me and Allen about him coming back in the same condition with refer-

ence to his father's estate after his discharge in bankruptcy as he was before."

It is apparent, from the testimony of this witness, that he either assumed that the notes of defendants Will, Adam, and plaintiff, disregarding interest, which amounted to $4,700, were, in fact, paid, or that plaintiff should be paid one fifth of the amount thereof, upon the theory that he had lost his interest in the land. As already stated, the $3,400 note was not, however, paid, and the rest of the defendants refused to pay plaintiff anything, contending that whatever interest he had in the notes of Will and Adam was more than offset by the residence property which they had voluntarily given him. There is no pretense that James was authorized to represent his codefendants in the transaction referred to above, but merely a statement that, upon his suggesting the matter to them, they expressed a willingness to, and did, make the conveyance.

While plaintiff's version of the conversation referred to in the testimony of James, quoted above, does not entirely harmonize therewith in some particulars, it is, on the whole, not more favorable to him.

Appellant has apparently proceeded on the theory that the value of defendant's interest in the estate would be the same if they paid him the amount claimed as it would have been had he paid the amount due them and the estate, and received his share in kind. As a mathematical proposition, this may be true, but there is nothing in the evidence from which an agreement binding the defendants to carry out such an arrangement may be inferred.

No evidence whatever was offered to support the allegations of plaintiff's petition that, in the division of the property, a sum of money was paid to and held by the defendant James Primrose for plaintiff.

So far, we have given no consideration to the legal questions raised by counsel for appellant. As plaintiff has

failed to prove the oral contract alleged, it is unnecessary to do so, and we therefore express no opinion as to whether the alleged oral contract, if established by the evidence, would be enforcible. It follows that the judgment and decree of the court below, dismissing plaintiff's petition, must be and is—*Affirmed*.

WEAVER, C. J., LADD and GAYNOR, JJ., concur.